UNITED STATES of America,
Plaintiff-Appellee,

v.

AN ARTICLE OF DEVICE "THERA-
MATIC," etc., Defendant,

and

Ralph B. Cloward, Claimant-Appellant.

No. 82–4225.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1983.

Decided Sept. 12, 1983.

James M. Sattler, Honolulu, Hawaii, for defendant, claimant-appellant.

John J. Powers, III, Washington, D.C., for plaintiff-appellee.

Before BROWNING, C.J., and WRIGHT and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Cloward, a Honolulu neurosurgeon, seeks the return of a diathermy machine seized by the government as "misbranded" within the meaning of section 304(a) of the Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 334(a). The seizure was conducted pursuant to 21 U.S.C. § 334(b), which directs that the procedures for seizure under the Act "shall conform, as nearly as may be, to the procedure in admiralty," and rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed.R.Civ.P.Supp. Rule C. When this case was before us on a prior appeal, we held that the seizure of the device in Cloward's office violated the fourth amendment and we reversed the district court decision in favor of the government. *United States v. Device Labeled "Theramatic"*, 641 F.2d 1289 (9th Cir.1981). On remand, the district court granted the government's motion for summary judgment and again ordered destruction of the device. On this appeal, Cloward contends that the district court lacked jurisdiction, that insufficient untainted evidence existed to support the finding of forfeiture, and that the seizure provisions under rule C violate the due process clause of the fifth amendment. We affirm.

I

On January 16, 1973, the United States Attorney for the District of Hawaii filed a complaint for forfeiture against Cloward's diathermy machine and four accompanying leaflets. The complaint alleged that the

machine was misbranded because it was medically ineffective and thus useless in treating the conditions that the leaflets claimed the machine could alleviate. On the same day, pursuant to rule C, the clerk of the United States District Court for the District of Hawaii issued a warrant of arrest *in rem,* directing the United States Marshal to seize the device and leaflets. *United States v. Device Labeled "Theramatic",* 641 F.2d at 1290–91. On January 16 and 18, 1973, the marshal seized the articles in Cloward's medical office in Honolulu.

On February 16, 1973, Cloward moved to set aside the warrant of arrest and to compel the return of his machine, arguing that his fifth amendment due process rights had been violated. On February 20, 1973, he filed an answer to the complaint for forfeiture. In neither his motion nor the answer did Cloward oppose the government's contention that the machine had been misbranded. Because of prolonged efforts by the parties to reach a consent decree, four years passed before the district court denied Cloward's motion. The court then entered summary judgment for the government on the forfeiture action, condemning the device because it was misbranded and ordering its destruction once all appeals had been exhausted. Cloward then appealed both the denial of his motion and the judgment in favor of the government. *Id.* at 1291.

On appeal, Cloward argued for the first time that the seizure of the device and leaflets in his office violated the fourth amendment's prohibition against unreasonable searches and seizures. We concluded that "in the particular factual setting involved here, the procedure used in seizing [Cloward's] diathermy machine and the accompanying leaflets violated the Fourth Amendment." *Id.* We thus found it unnecessary to consider Cloward's fifth amendment due process claims, *id.* n. 5, and remanded the case to the district court for further proceedings.

On remand, the district court issued an order to show cause why the seized proper-ty should not be returned to Cloward. After receiving memoranda from both parties, the court concluded that our earlier decision did not require that the property be returned to Cloward, because sufficient evidence independent of that tainted by the illegal seizure had been introduced by the government in support of the forfeiture. The district court again ordered the property to be destroyed after exhaustion of all appeals.

## II

Cloward argues first that jurisdiction under the Act rests on seizure of the *res* and, since the *res* was improperly before the district court pursuant to a fourth amendment violation, the court lacked jurisdiction to order the device forfeited. We have already rejected this argument. *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 450–51 (9th Cir.1983) (forfeiture proceedings pursuant to 21 U.S.C. § 881). Moreover, an illegal seizure does not immunize the goods from forfeiture. Although "any evidence which is the product of an illegal search or seizure must be excluded at trial, . . . forfeiture may proceed if the Government can satisfy the requirements for forfeiture with untainted evidence." *Id.* at 450; *United States v. An Article of Drug,* 661 F.2d 742, 745 (9th Cir.1981); *One (1) 1971 Harley-Davidson Motorcycle,* 508 F.2d 351, 351 (9th Cir.1974) (per curiam); *John Bacall Imports, Ltd. v. United States,* 412 F.2d 586, 588 (9th Cir.1969).

Because Cloward does not contest the misbranding finding, there are no factual issues before the court. We must determine only the legal question whether sufficient independent evidence exists to support a finding of forfeiture.

The government offered two affidavits, each signed by a different Federal Drug Administration (FDA) official in 1977, as independent evidence supporting the misbranding finding. Cloward claims that language in both affidavits indicates that the

affiants' conclusions were based on information obtained by testing the illegally obtained device and reading the illegally obtained pamphlets. Hence, he argues, the affidavits do not provide independent, untainted evidence to support the misbranding finding.

We disagree. Although the affidavits refer at times to "the seized device," they indicate that the affiants' conclusions were based (1) on their general knowledge of theramatic devices, not on tests performed on the seized device, and (2) on information gathered by reading *copies* of the four leaflets. The record discloses that these copies were obtained by FDA agents during a routine inspection of Cloward's office in October 1972, three months before the seizure of the leaflets. Thus, the improper seizure of the leaflets merely provided the FDA with duplicative information. Because the conclusions and the affidavits were not based on the suppressed evidence, they constitute sufficient evidence to sustain a finding of misbranding.

### III

Cloward's primary contention is that the forfeiture procedures under rule C violate the due process clause. We specifically left open this question in our previous decision in this case. *See United States v. Device Labeled "Theramatic"*, 641 F.2d at 1291 n. 5. We now reject Cloward's due process claims.

■ Cloward first argues that the procedures violate the due process clause because they do not provide for notice and a hearing prior to the governmental seizure of private property. This argument was rejected by the Supreme Court in *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950). There, the Court held that the government's interest in protecting public consumers from mislabeled products permitted Congress to establish procedures providing for only a postseizure hearing. *Id.* at 598–600, 70 S.Ct. at 872–873. Clo-

ward claims that *Ewing*'s validity has been undermined by subsequent due process cases. Rather than undermining *Ewing*, however, the Supreme Court has repeatedly approved its holding that the government may seize products which violate the Act without providing prior notice or hearing. *See Hodel v. Virginia Surface Mining & Reclamation Association*, 452 U.S. 264, 301–03, 101 S.Ct. 2352, 2373–74, 69 L.Ed.2d 1 (1981); *Parratt v. Taylor*, 451 U.S. 527, 538–39, 101 S.Ct. 1908, 1914–15, 68 L.Ed.2d 420 (1981); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678–79, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 91–92, 92 S.Ct. 1983, 1999–2000, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 263 & n. 10, 90 S.Ct. 1011, 1018 & n. 10, 25 L.Ed.2d 287 (1970).

■ Cloward contends that even assuming that no preseizure hearing is required, the postseizure hearing under rule C is inadequate because it does not require the government to provide a prompt hearing and it puts the burden on the defendant to request a hearing. Thus, Cloward claims, the government is free to seize property and do nothing for an indefinite period of time should it choose to do so.

The Supreme Court in *Ewing* held that the postseizure trial on the merits under the old Admiralty Rules was sufficient to satisfy the hearing requirement of the due process clause: "When the libels are filed the owner has an opportunity to appear as a claimant and to have a full hearing before the court. This hearing, we conclude, satisfies the requirements of due process." 339 U.S. at 598, 70 S.Ct. at 872 (footnote omitted). Although *Ewing* did not involve rule C, we are satisfied that Cloward's claim should be governed by its holding. *Accord United States v. Articles of Hazardous Substance*, 588 F.2d 39, 43 (4th Cir.1978).

Cloward is entitled to a hearing "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545,

552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Although neither the Act nor the supplemental rules explicitly speak of the timeliness of the postseizure hearing, the mechanics of rule C enable a claimant to obtain a prompt hearing to determine if the seized item has been misbranded. In an action *in rem* the government is required to file a complaint for forfeiture as a condition precedent to obtaining the arrest warrant. *See* rule C(2), (3). Thus, a lawsuit is pending in the district court at the time of the seizure. Under rule C(6), the claimant may file an answer to the forfeiture complaint and a claim for his property. By filing any of a variety of motions, including a motion to quash the warrant, a motion to dismiss the complaint, or a motion for summary judgment, a claimant may obtain an immediate hearing on the misbranding question or the validity of the seizure. Even if these efforts are unsuccessful, he may still obtain a full trial on the merits, including a jury trial if he requests it. 21 U.S.C. § 334(b).

Given the need for swift governmental action to remove misbranded products from the stream of commerce, these procedures provide as much protection to claimants as is feasible. We conclude that rule C provides for a sufficiently prompt hearing to satisfy the due process clause. *Accord United States v. Articles of Hazardous Substance*, 588 F.2d at 43; *United States v. Articles of Drugs ... WANS*, 526 F.Supp. 703, 705 (D.Puerto Rico 1981).

 Nor is rule C unconstitutional as applied to the facts of this case. Cloward filed a motion to set aside the warrant of arrest within one month of the seizure and an answer to the complaint shortly thereafter. Although the misbranding question was not resolved until four years later when the district court decided the government's motion for summary judgment, the four-year delay was due to the settlement negotiations in which both parties took part. At any time, Cloward was free to eschew the negotiations and obtain a prompt hearing on his claim. A defendant cannot contend that he did not obtain a prompt hearing when he chose not to avail himself of an opportunity to present his claim. *See Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610, 94 S.Ct. 1895, 1901, 40 L.Ed.2d 406 (1974). Likewise, due process is not violated merely because the burden is put on the defendant to request a hearing. *See, e.g., id.*

AFFIRMED.