814 P.2d 952

**Mack W. RICHARDSON, Jr., Director, Department of Law Enforcement of the State of Idaho, Plaintiff–Respondent,**

**v.**

**FOUR THOUSAND FIVE HUNDRED FORTY–THREE DOLLARS, UNITED STATES CURRENCY, Defendant–Appellant,**

**and**

**Mark Printz, Real Party in Interest–Appellant.**

**No. 18154.**

Court of Appeals of Idaho.

July 24, 1991.

Frederick G. Loats, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Tyra H. Stubbs, Deputy Atty. Gen., for plaintiff-respondent.

WINMILL, Judge, Pro Tem.

This appeal follows from a judgment entered by the district court ordering the forfeiture of seized currency, pursuant to I.C. § 37–2744. Mark Printz, the real party in interest, argues that the district court erroneously declined to give collateral estoppel effect to a prior suppression order, entered in a related criminal case, that held certain evidence—including the seized currency—was obtained in violation of Idaho's "knock and announce" statute.[1] For the reasons explained below, we reverse the judgment.

On November 25, 1986, at approximately 7:00 p.m., Printz sold a quantity of cocaine to an informant working for Department of Law Enforcement investigators. The sale took place in a shop building owned by Printz and located approximately forty yards from his residence. Based upon the information obtained through this controlled buy, the investigating officers obtained a search warrant for the building.

The search warrant was executed at 10:00 p.m. that same evening by two investigators assisted by a Kootenai County deputy sheriff. It is undisputed that, at the time of the search, the building was occupied by Printz and two companions, the lights were on, and music could be heard by the officers as they approached the building. It is also undisputed that one of the investigators knocked or banged on the door, the force of which caused the door to swing open. The officers testified at trial that simultaneous with the knock on the door, one of the investigators announced he was a police officer and had a search warrant. Printz and his companions testified that they did not hear anything but a loud noise, which was followed by the door swinging open. In any event, it was undisputed that the officers then ordered Printz and his companions to the ground, and entered the building without seeking permission.

Inside the building, the officers did not find any cocaine or other controlled substances. However, in Printz' trousers they found $613, including $300 in prerecorded currency which had been used by the informant to purchase cocaine from Printz earlier that evening. They also found $4,200 on a workbench in the building and a set of scales used in drug transactions to obtain an exact weight.

Printz was subsequently charged with delivery of a controlled substance, cocaine. Printz filed a motion, in the criminal action, to suppress the evidence seized by the officers. On March 19, 1987, a hearing was held before District Judge James F. Judd on the motion to suppress. At the hearing, the deputy sheriff testified on behalf of the state. On April 16, the district judge

---

**1.** Idaho Code § 19–4409 provides: "The officer may break open any outer or inner door or window of any house, or any part of a house, or any thing therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

granted Printz' motion to suppress, finding that the execution of the search warrant on Printz' building failed to comply with Idaho's "knock and announce" statute, I.C. § 19–4409. The state sought reconsideration of the suppression ruling contending that the two investigators were unable to attend the suppression hearing because they were required to attend a mandatory training school. This motion was denied. The state did not pursue an interlocutory appeal of the suppression ruling,[2] and the criminal case proceeded to trial. On November 25, 1987, Printz was convicted of the charged offense. His conviction was subsequently affirmed by this Court. *State v. Printz*, 115 Idaho 566, 768 P.2d 829 (Ct.App.1989).

On December 15, 1986, while the criminal charges against Printz still were pending, the state filed its complaint in this civil action seeking the forfeiture of the $4,543 seized during the execution of the search warrant. The civil case was assigned to District Judge Gary M. Haman. On September 12, 1987, Printz filed a motion for summary judgment contending the state was collaterally estopped from proceeding with the civil case because of the suppression ruling in the criminal case. The motion was denied and this case was tried on June 10, 1988. Thereafter, the district judge held that the currency was used or intended to be used in connection with the illegal drug activity and was subject to forfeiture. I.C. § 37–2744(a)(6). This appeal followed.

Printz raises three issues on appeal. First, he argues that Judge Haman erred in concluding that the state was not barred by the doctrine of collateral estoppel from relitigating the validity of the seizure of the currency. Printz also contends that the court erred in its decision that the state complied with the statute in executing the search warrant on the building. Finally, Printz argues that the court erred in finding that the currency was used or intended for use in the dispensing of controlled sub-stances and was therefore subject to forfeiture. Because we hold that the district court erred in not giving collateral estoppel effect to the suppression ruling in Printz' criminal case, we find it unnecessary to address the additional issues raised in this appeal.

■ We first note our standard of review on the collateral estoppel issue determined by the district court on summary judgment. Whether collateral estoppel bars the relitigation of issues adjudicated in prior litigation between the same parties is a question of law upon which we exercise free review. *Gilbert v. State*, 119 Idaho 684, 809 P.2d 1163 (Ct.App.1991); *Cole v. Kunzler*, 115 Idaho 552, 768 P.2d 815 (Ct. App.1989).

Before considering the application of collateral estoppel to this case, it is helpful to restate the doctrine and identify the values which it serves:

> Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation.... Collateral estoppel, like the related doctrine of res judicata, serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." [Footnote and citations omitted.]

*United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984), *quoting Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). *Accord Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987). Given the significant policies advanced by the doctrine of collateral estoppel, the courts have shown little reluctance to expand its use where appropriate. For example, it has been applied in civil suits to issues resolved in prior criminal proceed-

---

**2.** Idaho Appellate Rule 11(c)(7) specifically authorizes an interlocutory appeal from "an order granting a motion to suppress." However, such an appeal must have been perfected by filing a notice of appeal within forty-two days from the date of the court's order suppressing the evidence obtained during the execution of the search warrant. I.A.R. 14(a).

ings. *Anderson,* 112 Idaho at 184, 731 P.2d at 179. Similarly, the doctrine has been applied in forfeiture actions, so that a party is collaterally estopped from relitigating issues resolved by an adverse ruling following a suppression hearing in a companion criminal case. *See, e.g., United States v. United States Currency in the Amount of $228,536.00,* 895 F.2d 908 (2d Cir.1990) (defendant collaterally estopped); *Franklin v. Klundt,* 50 Wash.App. 10, 746 P.2d 1228 (1987) (same); *State v. Eleven Thousand Three Hundred Forty–Six Dollars & No Cents in United States Currency,* 777 P.2d 65 (Wyo.1989) (state collaterally estopped). With this background in mind, we turn to the question of whether the doctrine should have been applied in this case.

The availability of the collateral estoppel doctrine depends upon the satisfaction of five conditions identified by our Supreme Court in *Anderson:*

(1) Did the party against whom the earlier decision is asserted have a full and fair opportunity to litigate that issue in the earlier case?

(2) Was the issue decided in the prior litigation identical with the one presented in the action in question?

(3) Was the issue actually decided in the prior litigation?

(4) Was there a final judgment on the merits?

(5) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

112 Idaho at 183–84, 731 P.2d at 178–79. Under the facts of this case there is no question, and the district court correctly held, that the final four conditions identified in *Anderson* have been satisfied. The issue decided in the suppression proceeding, (i.e., whether the officers complied with the "knock and announce" statute in the execution of the search warrant) is precisely the same issue which was critical to the forfeiture proceeding. That issue

was actually decided in the criminal case by Judge Judd's ruling that the officers had not complied with the statute and that the evidence seized was inadmissible. This was a final, appealable decision because of the state's right to pursue an interlocutory appeal following the suppression hearing. Finally, the state was the plaintiff in the criminal proceeding and is the party against whom collateral estoppel was asserted by Printz in this case.

However, in the present action, the district court concluded that the state was not barred from relitigating the issue of compliance with the statute because it did not have a "full and fair opportunity to litigate that issue" in the suppression hearing. Before considering the district court's reasoning, we note that—without a compelling showing of unfairness—the court should not refuse to give the first adjudication preclusive effect. RESTATEMENT (SECOND) OF JUDGMENTS § 28 *comment* j at 284 (1982).

The district court's primary concern was that the two investigators involved in the execution of the search warrant were not available to testify at the suppression hearing. From the court's written decision, it is obvious that this concern was premised on the assumption that the two investigators were the only officers who participated in executing the search warrant on the building. However, the district court's assumption was incorrect. The record is clear that the deputy sheriff who testified at the suppression hearing also participated in the execution of the search warrant on the building.[3] Thus, the state was not deprived of presenting any evidence at the suppression hearing, but was able to proceed with one of three witnesses who was able to testify as to what occurred when the search warrant was executed. The record does not indicate that the state requested a continuance in the suppression hearing until the two investigators could

---

3. The district court's opinion suggests that the deputy sheriff was involved in the search of Printz' residence while the two investigators executed the search warrant with regards to the shop building. However, the deputy sheriff and two investigators testified at trial that the deputy sheriff was with the two investigators at the shop building when the search warrant was executed.

testify. After the judge concluded that the evidence should be suppressed, the state filed a motion for reconsideration accompanied by affidavits from the two investigators. The motion was denied by the court.

Under these circumstances, we conclude that the state was not denied the opportunity to fully and fairly litigate the issue of compliance with the statute. Our Supreme Court in *Anderson,* 112 Idaho at 184, n. 5, 731 P.2d at 179, n. 5, cited with approval the various factors listed in *Gilberg v. Barbieri,* 53 N.Y.2d 285, 441 N.Y.S.2d 49, 51–52, 423 N.E.2d 807, 809–10 (1981), as to whether a party had a full and fair opportunity to litigate a prior determination. Those factors included, *inter alia,* the size of the claim, the extent of the litigation, the competence of counsel, the availability of new evidence, and the foreseeability of future litigation. No suggestion is made that the unavailability of some, but not all, of the witnesses who can testify as to a particular matter constitutes grounds for ignoring the general rule of collateral estoppel.

In *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the United States Supreme Court suggested that a related element for consideration in determining whether a party had a full and fair opportunity to litigate an issue is "whether without fault of his own the [party] was deprived of crucial evidence or witnesses in the first litigation." *Id.* at 333, 91 S.Ct. at 1445. In applying this criterion to the instant case, the key inquiry is whether the two investigators were "crucial witnesses." Several circumstances suggest they were not. The deputy sheriff, who participated in execution of the search warrant and was present when the entry to the building was obtained, testified at the suppression hearing. With the deputy sheriff available to testify, the state chose not to request a continuance and opted to proceed without the testimony of the two investigators. Finally, after reviewing affidavits of the two investigators, the district judge concluded that their testimony was not so essential as to justify a reconsideration of his decision granting Printz' motion to suppress. Given these factors, we conclude that the unavailability of the two investigators at the time of the suppression hearing did not deprive the state of a "full and fair opportunity" to litigate the issue of compliance with the statute.

■ The district court also concluded that the state did not have a "full and fair opportunity" to litigate the focal issue because it did not have an adequate incentive to aggressively defend the suppression motion. The state in the criminal proceeding relied primarily on the testimony of the informant who made a controlled buy of cocaine from Printz and not on evidence seized at the building. However, the suppression motion sought to exclude evidence which would have corroborated the informant's testimony, including the marked currency which the informant used to purchase the cocaine and which was found on Printz' person during the execution of the search warrant. Clearly the need to corroborate the testimony of the informant provided ample incentive for the state to consider the suppression hearing as a significant proceeding within the context of the criminal case. The significance of the suppression hearing looms even larger when one considers the fact that the forfeiture proceeding had been initiated. Furthermore, it was foreseeable that a decision in the suppression hearing would have a significant bearing on the state's success in obtaining a forfeiture of the currency seized during the execution of the search warrant. For these reasons, we conclude that the state had ample incentive to aggressively defend its position during the suppression hearing.

In light of the foregoing, we conclude that the district court erred in refusing to give collateral estoppel effect to the decision that the state failed to comply with the statute in executing the search warrant on the building. However, having reached that conclusion, we must consider what impact it has upon the forfeiture proceedings before the district court.

Although the "knock and announce" requirement is set forth by statute, it has its roots in the common law, Semayne's Case, 5 Coke 91, 77 Eng.Rep. 194 (K.B.1603), and is required by the Fourth Amendment. *See Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *United States v. Valenzuela*, 596 F.2d 824 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). Because of the significant policies served by the statute, the Idaho Supreme Court has held that the exclusionary rule, generally applicable to evidence seized in violation of a defendant's rights under the Fourth Amendment, is also applicable to evidence seized in violation of the statute. *State v. Rauch*, 99 Idaho 586, 586 P.2d 671 (1978).

■ Although our appellate courts have not had the opportunity to address the subject, the United States Supreme Court, as well as other federal and state appellate courts, have held that the exclusionary rule generally applied to evidence obtained in violation of the Fourth Amendment is also applicable in forfeiture proceedings. *See, e.g., One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); *United States v. U.S. Currency $31,828*, 760 F.2d 228 (8th Cir. 1985); *State v. One 1987 Toyota Pickup*, 447 N.W.2d 243 (1989); *Deeter v. Smith*, 106 Wash.2d 376, 721 P.2d 519 (1986). Given the important policies served by the statute and the quasi-penal nature of forfeiture proceedings, we conclude that the exclusionary rule for violations of the statute, first adopted in *Rauch, supra,* extends to forfeiture actions brought under the authority of I.C. § 37–2744.

■ In view of the district court's prior determination in the criminal case that the currency was seized in violation of the statute, it follows that the currency was inadmissible in the forfeiture proceeding.

However, the mere fact that property is seized illegally does not immunize it from forfeiture. Although evidence which is the product of the seizure must be excluded at trial, the state may pursue a forfeiture claim if it can show that the property is subject to forfeiture with evidence which is not tainted by the illegal seizure. *Dodge v. United States*, 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392 (1926); *United States v. An Article of Device "Theramatic,"* 715 F.2d 1339 (9th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 685 (1984); *United States v. Eighty-eight Thousand, Five Hundred Dollars*, 671 F.2d 293 (8th Cir.1982). *See also* 1 W. LaFAVE, SEARCH AND SEIZURE § 1.7(a), at 146 (2d ed. 1987). *See also Immigration and Naturalization Service v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). However, without the evidence obtained during the execution of the search warrant, including the currency and the circumstances of seizure, there is no evidence to support the requisite finding that the currency was used or intended to be used in connection with illegal drug activity and was therefore subject to forfeiture.

Accordingly, we reverse the decision of the district court ordering the forfeiture of the currency. Costs awarded to appellant, Mark Printz. No attorney fees allowed on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.