**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38723**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **2012 Opinion No. 30** |
| Plaintiff-Respondent, ) | |
| ) | **Filed: May 21, 2012** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| WADE LAMONTE PETERSON, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

Order denying motion for order for reimbursement, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Wade Lamonte Peterson appeals from the district court's order denying Peterson's motion for an order for reimbursement of sums he paid as fines, fees, and restitution on a criminal conviction that was subsequently vacated on appeal. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

This appeal arises from the denial of Peterson's motion seeking an order for reimbursement that Peterson filed after his judgment of conviction for felony possession of a controlled substance was vacated by the Idaho Supreme Court in *State v. Peterson*, 148 Idaho 593, 226 P.3d 535 (2010). In that case, the following facts and procedural background relative to Peterson's prior criminal case were set forth. In 2003, Peterson was arrested for possession of a controlled substance, carrying a concealed weapon, possession of illegal fireworks, and illegal

1

possession of prescription drugs. The state filed a complaint against Peterson, charging him with felony possession of a controlled substance, I.C. § 37-2732(c), and two misdemeanors.

At a preliminary hearing held before a magistrate, the felony charge was dismissed because the state failed to obtain a lab report within the appropriate time limit. At Peterson's arraignment for the two misdemeanor charges, the state sought to amend the complaint to reinstate the dismissed felony charge. The magistrate denied this request and informed the prosecutor that the felony charge could be refiled after a lab report was obtained. A new complaint was filed against Peterson for felony possession of a controlled substance and a probable cause hearing was held. At that hearing, the prosecutor informed the magistrate that the state intended to amend the new complaint containing the felony charge to add the misdemeanor charges. At a pretrial conference on the misdemeanor complaint, the magistrate asked whether the felony charge had been refiled. The prosecutor indicated that, to his knowledge, the misdemeanor charges were the only charges pending against Peterson. Thereafter, Peterson appeared before the magistrate and entered into an Idaho Criminal Rule 11 plea agreement with the state whereby Peterson pled guilty to one misdemeanor charge and the remaining misdemeanor charge was dismissed.

In 2004, after Peterson completed his probation for the misdemeanor, a warrant was issued for Peterson on the felony charge for possession of a controlled substance. At the arraignment before the magistrate, Peterson indicated that he believed the felony charge had been dismissed as part of his plea agreement with the state in 2003. Peterson filed a motion to dismiss, which was denied by the district court. Peterson entered a conditional guilty plea to the felony. The district court sentenced Peterson to a unified term of seven years, with a minimum period of confinement of two years; suspended the sentence; and placed Peterson on probation for seven years. The district court also ordered Peterson to pay financial penalties including costs, fees, fines, and restitution. Peterson appealed.

In February 2010, the Idaho Supreme Court held that, based upon the record before the district court in interpreting the plea agreement, the district court's determination that the plea agreement did not encompass all charges arising from Peterson's 2003 arrest was erroneous. *Peterson*, 148 Idaho at 597, 226 P.3d at 539. Thus, the Court vacated Peterson's judgment of conviction for felony possession of a controlled substance. *Id.* Accordingly, in March 2010, the district court entered an order dismissing Peterson's case. In February 2011, Peterson filed a

2

motion in his criminal case, seeking an order for reimbursement of the $520 Peterson paid in financial penalties and restitution in 2006 and 2007 pursuant to his felony conviction. Specifically, Peterson's motion indicated that it was based upon the following costs, fees, fines, and restitution:  $17.50 for court costs, $6 for POST fees, $10 for administrative surcharge fees,[1] $5 for ISTARS fund fees, $50 fine for the victims compensation account, $1,000 criminal fine, and $100 for restitution.  Peterson attached an accounting to his motion showing the financial penalties assessed as a result of his felony conviction and the payments he made to the clerk of the district court.  After a hearing, the district court found that it lacked personal jurisdiction over the nonparty agencies that collected, disbursed, or retained the $520 paid by Peterson and entered an order denying his motion.  Peterson appeals.

## II.

## ANALYSIS

We initially address the state's assertion that the district court lacked subject matter jurisdiction to consider Peterson's motion because, while raised for the first time on appeal, a challenge to a court's subject matter jurisdiction may be brought at any time.  *See State v. Lundquist*, 134 Idaho 831, 835, 11 P.3d 27, 31 (2000); *State v. Diggie*, 140 Idaho 238, 240, 91 P.3d 1142, 1144 (Ct. App. 2004).  A claim that the district court lacked subject matter jurisdiction presents a question of law over which we exercise free review.  *State v. Savage*, 145 Idaho 756, 758, 185 P.3d 268, 270 (Ct. App. 2008); *State v. Parvin*, 137 Idaho 783, 785, 53 P.3d 834, 836 (Ct. App. 2002).

In *State v. Jakoski*, 139 Idaho 352, 355, 79 P.3d 711, 714 (2003), the Idaho Supreme Court held that, "absent a statute or rule extending its jurisdiction, the trial court's jurisdiction to amend or set aside a judgment expires once the judgment becomes final, either by expiration of the time for appeal or affirmance of the judgment on appeal."  The Court noted that such rules include I.R.C.P. 60(b), which permits a civil judgment to be set aside for several specified reasons, and I.C.R. 35, which permits a motion to correct an illegal sentence.  *Jakoski*, 139 Idaho at 355 n.5, 79 P.3d at 714 n.5.  The state argues that, pursuant to the holding in *Jakoski*, the

---

[1]     Peterson refers to this fee as a county justice fund fee.  However, the only $10 charge that appears on the accounting Peterson attached to his motion is referred to as an administrative surcharge.

3

district court lacked subject matter jurisdiction to consider Peterson's motion because the motion was filed over ten months after the district court issued a final order dismissing Peterson's case. The state further asserts that no rule extended the district court's jurisdiction. The state, therefore, characterizes the motion as one seeking an amendment to the district court's order dismissing Peterson's case to include an order for reimbursement. We conclude that this is an appropriate characterization of Peterson's motion. In reply to the state's argument, Peterson asserts that the district court's jurisdiction to hear his motion was extended by various rules and related case law.

Specifically, Peterson argues that, because the underlying costs, fines, and fees awarded by the district court were part of Peterson's underlying and vacated criminal sentence, his motion seeking an order for reimbursement of money paid toward these criminal penalties should be treated as a motion to correct an illegal sentence pursuant to I.C.R. 35. Idaho Criminal Rule 35(a) is a narrow rule which allows a trial court to correct an illegal sentence or to correct a sentence imposed in an illegal manner at any time. *State v. Farwell*, 144 Idaho 732, 735, 170 P.3d 397, 400 (2007). The question of whether the sentence imposed is illegal is a question of law freely reviewable by the appellate court. *State v. Josephson,* 124 Idaho 286, 287, 858 P.2d 825, 826 (Ct. App. 1993); *State v. Rodriguez,* 119 Idaho 895, 897, 811 P.2d 505, 507 (Ct. App. 1991). Here, Peterson's sentence was legal when imposed and had already been reversed when the judgment of conviction was vacated. There is no longer an order imposing costs, fines, or fees that could be corrected or vacated via a Rule 35 motion. Therefore, I.C.R. 35 is inapplicable. Accordingly, we do not construe Peterson's motion seeking an order for reimbursement as a motion to correct an illegal sentence pursuant to I.C.R. 35.

Peterson also asserts that, pursuant to *State v. Jensen*, 149 Idaho 758, 241 P.3d 1 (Ct. App. 2010), the jurisdictional time limit articulated in *Jakoski* does not apply in the context of proceedings related to *restitution* entered in conjunction with a criminal conviction. To support this argument, Peterson emphasizes the following passage in that opinion:

> Restitution is a statutorily granted power to the criminal trial court, not constitutional. *See* [*State v. Armstrong*, 146 Idaho 372, 378, 195 P.3d 731, 737 (Ct. App. 2008] (noting that the Supreme Court in *Jakoski* specifically referenced a constitutional basis for its holding). Restitution is in the nature of a civil remedy as opposed to a criminal sentence and, indeed, the statute references applicability of the rules of civil procedure. I.C. § 19-5304(10). The time frames set out in I.C. § 19-5304(6) and (10), regarding when a court may entertain a request for

4

restitution or entertain a request for relief, are procedural in nature. While the procedure is apparently designed to secure finality so that the order of restitution may become a civil judgment, I.C. § 19-5305, that purpose does not change their nature from defining when the court may act to, instead, terminating the court's subject matter jurisdiction to act. Orders of a criminal trial court relating to restitution do not invade the authority over a criminal defendant that is constitutionally or statutorily conferred upon the executive branch. The 42-day time limit in I.C. § 19-5304(10), while corresponding to the number of days granted to file an appeal, does not, itself, affect an appellate court's assumption of jurisdiction.

*Jensen*, 149 Idaho at 762, 241 P.3d at 5.

We note that the restitution statute at issue in *Jensen* was I.C. § 19-5304. As we explained in that case, while a trial court in a criminal case may lose subject matter jurisdiction to enter certain orders or grant certain relief after a judgment of conviction has become final, I.C. § 19-5304 expressly confers jurisdiction to order restitution beyond the date of finality of the judgment of conviction. *Jensen*, 149 Idaho at 762, 241 P.3d at 5. Specifically, I.C. § 19-5304(6) permits restitution orders to be entered by the court at the time of sentencing or at a later date as deemed necessary. As Peterson points out, the restitution statute at issue in this case is I.C. § 37-2732 because, in the order denying Peterson's motion, the district court indicated that Peterson had been ordered to pay restitution for the cost of testing the controlled substance. Idaho Code Section 37-2732(k) provides that, upon conviction of a felony under I.C. § 37-2732, the court may order restitution for costs incurred by law enforcement agencies in investigating the violation. However, unlike I.C. § 19-5304, no provision of I.C. § 37-2732 expressly confers jurisdiction to order restitution beyond the date of finality of a judgment of conviction. Accordingly, while *Jensen* indicates that the jurisdictional time limit articulated in *Jakoski* does not apply in the context of proceedings relating to restitution entered in conjunction with a criminal conviction pursuant to I.C. § 19-5304, *Jensen* does not stand for the proposition that such time limit does not apply to restitution entered pursuant to I.C. § 37-2732.

Peterson also asserts that, pursuant to this Court's holding in *State v. Mosqueda*, 150 Idaho 830, 834, 252 P.3d 563, 567 (Ct. App. 2010)--restitution is, in essence, a civil proceeding distinct from the criminal case--and according to the Idaho Supreme Court's reasoning in *State v. Hartwig*, 150 Idaho 326, 329, 246 P.3d 979, 982 (2011), the provisions of I.R.C.P. 60(b) may apply to extend the district court's jurisdiction to hear his motion with respect to restitution.

5

Hartwig pled guilty to lewd and lascivious conduct with a minor under the age of sixteen and was required to comply with the requirements of the Sexual Offender Registration Act, I.C. §§ 18-8301 to 18-8311. After the district court terminated Hartwig's probation and dismissed the case with prejudice, Hartwig filed a petition for exemption from the sex offender registration requirements, which the district court denied. Hartwig again petitioned the district court. The district court held a hearing and issued an order releasing Hartwig from the registration requirements. The state moved for reconsideration and Hartwig claimed that the state was not permitted to seek reconsideration under the Idaho Rules of Civil Procedure. The state contended that the Idaho Criminal Rules governed the motion. The district court accepted the state's contention, entered an order granting the state's motion for reconsideration, and reinstated Hartwig's duty to register as a sex offender. Hartwig appealed.

On appeal, the Idaho Supreme Court noted that the sex offender registration requirements were intended by the legislature to be remedial and, therefore, civil in nature. Therefore, the Court concluded that the district court's acceptance of the prosecutor's assertion that Hartwig's motion was governed by the Idaho Criminal Rules was error. *Hartwig*, 150 Idaho at 328, 246 P.3d at 981. The Court reasoned that the order releasing Hartwig from sex offender registration requirements was a final appealable order; cited to jurisdictional limitations enumerated in *Jakoski*; and concluded that, in the absence of a statute or rule extending the trial court's jurisdiction or a timely appeal by the state, the trial court's jurisdiction to modify the order releasing Hartwig expired after forty-two days. *Hartwig*, 150 Idaho at 329, 246 P.3d at 982. The Court also noted that the state had not identified a basis under I.R.C.P. 60(b) upon which the district court could have granted relief. Peterson asserts that this language indicates that a motion for reconsideration related to the determination of sex offender registration requirements, which the Court in *Hartwig* identified as civil in nature, may be heard by a trial court even though filed in a criminal case if a rule, such as Rule 60(b), is shown to apply and extend the jurisdiction of the trial court. Thus, as noted above, Peterson argues that, pursuant to this Court's determination in *Mosqueda* that restitution is a civil proceeding and because *Hartwig* indicates that a motion that is civil in nature may be heard by a trial court even though filed in a criminal case if Rule 60(b) applies to extend jurisdiction, the district court had jurisdiction to hear his motion seeking an order for reimbursement with respect to restitution.

6

In *State v. Johnson*, 152 Idaho 41, 266 P.3d 1146 (2011), which was decided shortly after *Hartwig*, an adult sex offender filed a petition in his previously dismissed criminal case seeking an exemption from his duty to register as a sex offender. The petition was denied. On appeal, the Idaho Supreme Court held that it had no jurisdiction to decide the appeal because sex offenders seeking exemption from filing under the Sex Offender Registration and Community-Right-to-Know Act must file their petition as a new civil action if their criminal case has been dismissed or fully adjudicated and the time for appeal has run. *Johnson*, 152 Idaho at 48, 266 P.3d at 1153. Recently, in *State v. Giovanelli*, ___Idaho___, ___, 274 P.3d 18, 19-20 (Ct. App. 2012), this Court determined that, pursuant to *Johnson*, we lacked jurisdiction to hear the state's appeal in which it asserted that the district court erred in affirming the denial of its petition to transfer Giovanelli to the adult sex offender registry. The state had filed its petition in juvenile court after Giovanelli reached the age of twenty-one years. However, because jurisdiction under the Juvenile Corrections Act ended when Giovanelli reached the age of twenty-one, the state was required to proceed with a separate civil case filed in the district court. *Giovanelli*, ___Idaho at ___, 274 P.3d at 20.

In *Jakoski*, the defendant filed a motion pursuant to I.C.R. 33(c) seeking to withdraw his guilty plea on the grounds it was not made knowingly, intelligently, and voluntarily, and that his attorney was ineffective. The Court determined that I.C.R. 33(c) did not include any provision extending the jurisdiction of the trial court for the purpose of hearing a motion to withdraw a guilty plea and, therefore, because Jakoski did not appeal the judgment, it became final after forty-two days and the trial court lost jurisdiction to hear the motion. *Jakoski*, 139 Idaho at 355, 79 P.3d at 714. The Court then declined to view Jakoski's motion as an application for post-conviction relief because "it would be too much of a stretch to hold that a motion filed in a criminal case can be considered as a pleading commencing civil litigation." *Id.* at 355, 70 P.3d at 714. Thus, *Johnson*, *Giovanelli*, and *Jakoski* indicate that Peterson's motion seeking an order for reimbursement with respect to restitution, which is considered civil in nature, could not be filed in his criminal case.

Even if the provisions of I.R.C.P. 60(b) could be applicable to a motion for reimbursement for sums paid toward restitution, Peterson's argument that his motion falls within the scope of I.R.C.P. 60(b)(4) and (5) is without merit. Peterson correctly asserts that motions brought pursuant I.R.C.P. 60(b)(4) and (5) must be made within a reasonable time and are not

subject to the general requirement that an I.R.C.P. 60(b) motion be made within six months after entry of the underlying judgment or order. Idaho Rule of Civil Procedure 60(b)(4) provides that, upon a motion and just terms, the court may relieve a party from a final judgment, order, or proceeding if the judgment is void. In order for a judgment to be void, there must be some jurisdictional defect in the court's authority to enter the judgment, either because the court lacks personal jurisdiction or because it lacks jurisdiction over the subject matter of the suit. *Meyer v. Meyer*, 135 Idaho 460, 462, 19 P.3d 774, 776 (Ct. App. 2001). Additionally, a judgment is void when a court's action amounts to a plain usurpation of power constituting a violation of due process. *Dragotoiu v. Dragotoiu*, 133 Idaho 644, 647, 991 P.2d 369, 372 (Ct. App. 2000). However, a party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Peterson does not present any substantive argument in support of his claim that his motion falls within the scope of I.R.C.P. 60(b)(4). As such, we will not consider this issue.

Idaho Rule of Civil Procedure 60(b)(5) provides that, upon a motion and just terms, the court may relieve a party from a final judgment, order, or proceeding if the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated. Peterson cites to *Stuart v. State,* 128 Idaho 436, 437, 914 P.2d 933, 934 (1996) to support his claim that his motion seeking an order for reimbursement of the sums he paid toward restitution falls within the scope of I.R.C.P. 60(b)(5). In that post-conviction case, the Idaho Supreme Court described the background and prior proceedings of Stuart's criminal case and prior post-conviction actions as follows:

> In 1982, Gene Francis Stuart was convicted of first degree murder by torture and sentenced to death. The Court upheld Stuart's death sentence on his direct appeal in *State v. Stuart*, 110 Idaho 163, 715 P.2d 833 (1985) (*Stuart I*), and upheld the trial court's dismissal of Stuart's first petition for post-conviction relief in *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990) (*Stuart II*). In *Stuart v. State*, 118 Idaho 932, 935, 801 P.2d 1283, 1286 (1990) (*Stuart III*), the Court reversed the trial court's summary dismissal of Stuart's second petition for post-conviction relief and remanded for an evidentiary hearing, holding that Stuart had raised a triable issue of fact. On remand, the trial court denied all the relief sought by Stuart's second petition. The Court reversed this denial and remanded the case to the trial court with instructions. *Stuart v. State*, 127 Idaho 806, 817, 907 P.2d 783, 794 (1995) (*Stuart IV*).
>
> While the appeal in *Stuart IV* was pending, Stuart made an I.R.C.P. 60(b)(5) motion, asserting that the Court's opinion in *State v. Tribe*, 123 Idaho 721, 852 P.2d 87 (1993), regarding second degree murder by torture

reverses *Stuart I*, thereby entitling Stuart to relief from the trial court's judgment rendered after the evidentiary hearing.

The trial court denied Stuart's I.R.C.P. 60(b)(5) motion, and Stuart appealed.

*Stuart*, 128 Idaho at 437, 914 P.2d at 934. Stuart argued that the trial court should have granted his I.R.C.P. 60(b)(5) motion and applied *State v. Tribe*, 123 Idaho 721, 852 P.2d 87 (1993) to his case. However, the Court disagreed and determined that that I.R.C.P. 60(b)(5) was not applicable because *Tribe* did not reverse *Stuart I*. *Stuart*, 128 Idaho at 438, 914 P.2d at 935. The Court also pointed out that, in *Curl v. Curl*, 115 Idaho 997, 1000, 772 P.2d 204, 207 (1989), the Court previously determined that the ground in I.R.C.P. 60(b)(5)--that a prior judgment upon which the present judgment is based has been reversed or otherwise vacated--is limited to cases in which the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel.

In *Curl*, a husband filed a complaint seeking a divorce from his wife. The wife did not appear or file an answer in the action, and the divorce was granted by default. However, the wife was represented by counsel while the divorce was pending. At the time of the default hearing and the husband's award of divorce, counsel for the wife appeared and stipulated to the property settlement that the parties had agreed to. Nearly three years later, the wife became dissatisfied with her original stipulation and property settlement agreement and filed a motion under I.R.C.P. 60(b)(5) to modify the divorce decree in order to award her a portion of the husband's military retirement benefits. The wife alleged that the original divorce decree and underlying stipulation were based upon the ruling in a United States Supreme Court case that had been subsequently reversed by an act of Congress. Therefore, the wife argued that she was entitled to relief from the original divorce decree under I.R.C.P. 60(b)(5).

The Court determined that the wife's argument misconstrued the prior judgment language of I.R.C.P. 60(b)(5). Specifically, the Court reasoned that the language of I.R.C.P. 60(b)(5) relied on by the wife (the "prior judgment upon which it is based has been reversed or otherwise vacated") was inapplicable because there was no prior judgment in the sense of res judicata or collateral estoppel upon which the final divorce decree was based. *Curl*, 115 Idaho at 1000, 772 P.2d at 207. While the only prior judgment applicable to the final divorce decree was the United States Supreme Court case cited by the wife, the Court determined that the case was arguably

9

only used for its precedential value. Accordingly, the Court held that the wife's motion failed under the "prior judgment reversed" language of I.R.C.P. 60(b)(5). *Curl*, 115 Idaho at 1000-01, 772 P.2d at 207-08. The Court also noted that *Merrick v. Pearce*, 97 Idaho 250, 542 P.2d 1169 (1975) was in accord with its decision.

In *Merrick*, relief was granted under I.R.C.P. 60(b)(5) because the prior judgment, relied upon in the secondary case, had been modified. During the principal case, the jury returned special verdicts of $5,422.99 for Merrick in his claim against the defendants and $7,994.67 for the defendants upon their counterclaim against Merrick. However, judgment was entered for the defendants against Merrick for $8,441.35 rather than $2,571.68, the difference between the special verdicts. Ten months later, Merrick moved to amend the judgment to be for $2,571.68. The motion was granted and an amended judgment was entered upon the verdicts for $2,571.68. The secondary case was initiated when the defendants sued the company that provided a bond for Merrick in the principal case. Judgment was entered against the company based upon the $8,441.35 unsatisfied judgment that the defendants had obtained against Merrick. Later, when Merrick moved the trial court for an amended judgment, the company did so also. The trial court reduced the judgment against the company to reflect the reduction in the judgment against Merrick. The defendants appealed. The Idaho Supreme Court affirmed, reasoning that the trial court acted pursuant to its authority under I.R.C.P. 60(b)(5) because the prior judgment upon which the defendants' judgment was based had been modified. *Id.* at 251, 542 P.2d at 1170. Because the judgment in the secondary case was based upon the prior judgment in the sense of res judicata or collateral estoppel, the Court held that I.R.C.P. 60(b)(5) was applicable. *Id.*

Here, Peterson requests relief from the district court's final order dismissing his felony conviction pursuant to I.R.C.P. 60(b)(5) by seeking an order for reimbursement of restitution that, if allowed, would re-open Peterson's case to amend the district court's final order of dismissal. However, Peterson misconstrues the language of I.R.C.P. 60(b)(5) upon which he relies--that a prior judgment upon which the present judgment is based has been reversed or otherwise vacated. Peterson points to no prior judgment upon which the final order dismissing his case was based. Therefore, I.R.C.P. 60(b)(5) is inapplicable.

We finally address Peterson's argument that the district court had inherent authority to entertain the merits of Peterson's motion based upon principles of equity. To support this argument, Peterson cites to *Compton v. Compton*, 101 Idaho 328, 612 P.2d 1175 (1980) and

10

*Harper v. Harper*, 122 Idaho 535, 835 P.2d 1346 (Ct. App. 1992). Peterson further asserts that the court's inherent authority to entertain a motion seeking equitable relief is codified under I.R.C.P. 60(b) which provides that the rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding. However, in both *Harper* and *Compton*, the Idaho Supreme Court stated that an independent action in equity is available only under the most exceptional circumstances and only in the presence of an extreme degree of fraud or overreaching. *Compton*, 101 Idaho at 335-36, 612 P.2d at 1182-83; *Harper*, 122 Idaho at 537, 835 P.2d at 1348. Here, Peterson does not allege any fraud or overreaching. Accordingly, principles of equity do not operate to extend the jurisdiction of the district court to entertain the merits of Peterson's motion. Therefore, none of the rules cited by Peterson extend the jurisdiction of the district court to entertain the merits of Peterson's motion seeking an order for reimbursement.

Even assuming that the district court had such subject matter jurisdiction, the district court must also have personal jurisdiction over the necessary parties to order any reimbursement of funds to Peterson. As noted above, the district court found that it lacked personal jurisdiction over the nonparty agencies that collected, disbursed, or retained the $520 paid by Peterson. In making this finding, the district court relied upon *Hooper v. State,* 150 Idaho 497, 248 P.3d 748 (2011).

In *Hooper*, after being convicted of lewd and lascivious conduct with a minor, Hooper was ordered to pay restitution to the Idaho Industrial Commission's crime victims compensation account. After the Idaho Supreme Court vacated Hooper's conviction, Hooper moved to have the restitution order set aside. The district court granted the motion but refused to order a refund of the payments Hooper had already made that had been disbursed to the victims compensation account by the clerk of the district court. On appeal, the Idaho Supreme Court held that the district court lacked personal jurisdiction over the Idaho Industrial Commission because the Commission was never a party to the action and had not been served with a summons and complaint or submitted to the district court's jurisdiction. *Hooper,* 150 Idaho at 500, 248 P.3d at 751.

Peterson argues that, because there was no evidence regarding where the various sums he paid to the clerk of the district court were disbursed or that they were even disbursed, the district court erred by denying his motion seeking an order for reimbursement. Specifically, Peterson

11

asserts that, because *Hooper* is inapplicable and pursuant to *Crooks v. Maynard*, 112 Idaho 312, 732 P.2d 281 (1987), the district court had inherent authority over the clerk of the district court to order the return of those funds not yet disbursed. Peterson also argues that, pursuant to I.C. § 19-4705 and the inherent supervisory authority of the district court over the clerk of the district court, at least 90 percent of any amounts paid by Peterson allocated to his $1,000 criminal fine was retained by the district court and would present no issue regarding personal jurisdiction. Peterson finally argues that whatever amounts paid by Peterson allocated to the $100 restitution order that went to the prosecutor pursuant to I.C. § 37-2732(k) were properly within the district court's jurisdiction to reimburse.

We first note that *Crooks* arose out of a dispute between an administrative district judge and a district court clerk. The district court clerk initiated an original proceeding in the Idaho Supreme Court, requesting that an alternative writ of prohibition be issued against the administrative district judge. The case was submitted to a panel of masters who recommended that a writ of prohibition not be issued. The Idaho Supreme Court agreed and denied the application for the writ. *Crooks*, 112 Idaho at 313, 732 P.2d at 282. The Court noted that the power and control of the judicial branch over the office of the clerk of the district court is not absolute. *Id.* at 317, 732 P.2d at 286. The Court explained:

> Although we have concluded that the hiring and firing of deputy clerks is within the province of the clerk of the district court, and that the administrative district judge and/or district judge is not empowered to decide who shall be hired or appointed to serve as deputy clerks, we recognize that the function of the court may be jeopardized should a clerk hire or appoint an incompetent, unqualified, irresponsible or untrusty person as a deputy to perform court-related duties. By statute, the clerk is liable on his official bond to any person injured by a deputy's wrongful act or omission to perform any duty imposed by law. I.C. § 1-1003. But the smooth, efficient and proper operation of the court system itself may be nonetheless severely impaired or adversely affected depending upon the conduct of the court-related personnel. Therefore, the district judge, in the exercise of his supervisory power over the clerical activities of the clerk of the district court, controls the assignment of persons hired by the clerk. If the clerk makes an assignment of personnel to a judicial function which the judge finds unacceptable, he can refuse to accept that assignment.

*Crooks*, 112 Idaho at 318, 732 P.2d at 287.

We conclude that *Crooks* does not support Peterson's argument that the district court has inherent authority over the clerk of the district court to order the return of funds paid to the clerk

as a result of costs, fees, fines, and restitution ordered pursuant to a felony conviction if such funds have not yet been disbursed. Even if the district court clerk held the funds Peterson paid, the district court did not have personal jurisdiction over the clerk because the clerk was not a party to this action. Thus, for the district court to order the clerk to return funds Peterson paid to the clerk that were not disbursed, Peterson must have served the clerk properly with a summons and complaint or the clerk must have submitted to the district court's jurisdiction. *See Hooper*, 150 Idaho at 500, 248 P.3d at 751.

Even assuming that such funds were disbursed by the clerk of the district court, Peterson's motion indicated that it was based upon the following costs, fees, fines, and restitution ordered pursuant to his felony conviction: $17.50 for court costs, $6 for POST fees, $10 for in administrative surcharge fees, $5 for ISTARS fund fees, $50 fine for the victims compensation account, $1,000 criminal fine, and $100 for restitution. With respect to the $17.50 in court costs, I.C. § 31-3201A(2) provides that the clerk of the district court must collect the fee, except when the court orders such fee waived because the person is indigent, and allocate it as follows:

> If the magistrate court facilities are provided by the county, five dollars ($5.00) of such fee shall be paid to the county treasurer for deposit in the district court fund of the county; and twelve dollars and fifty cents ($12.50) of such fee shall be paid to the county treasurer who shall pay such fees to the state treasurer for deposit in accordance with subsection (15) of this section.

Regarding the POST fee, I.C. § 31-3201B indicates that the clerk of the district court must remit such fee to the county treasurer. With respect to the administrative surcharge fees and ISTARS fund fees, I.C. § 31-3201 indicates that the clerk of the district court must remit these fees to the county treasurer. The victims compensation account is overseen by the Idaho Industrial Commission. *See Hooper*, 150 Idaho at 498, 248 P.3d at 749. Additionally, while Peterson is correct that I.C. § 19-4705 provides that 90 percent of criminal fines shall be apportioned to the district court fund, we emphasize that I.C. 31-867 indicates that the district court fund is overseen by the board of county commissioners. Finally, with respect to any funds that may have been disbursed for the $100 in restitution, as Peterson acknowledges and discussed above, such restitution was ordered pursuant to I.C. § 37-2732. That statute provides that the court may order restitution for costs incurred by law enforcement agencies in investigating the violation, including the Idaho State Police, county and city law enforcement agencies, the office of the attorney general, and the county and city prosecuting attorney offices. I.C. § 37-2732(k). In the

13

order denying Peterson's motion, the district court indicated that Peterson had been ordered to pay restitution for the cost of testing the controlled substance. Therefore, any funds paid toward restitution would have been paid to the Idaho State Police.

Accordingly, even assuming that any funds paid by Peterson were disbursed by the clerk of the district court, such funds would have been disbursed to the county treasurer, the Idaho Industrial Commission, the district court fund overseen by the county board of commissioners, or the Idaho State Police. Thus, for the district court to order the return of such payments, Peterson would have to serve those parties properly with a summons and complaint or they would have to submit to the district court's jurisdiction. *See Hooper*, 150 Idaho at 500, 248 P.3d at 751. Absent such service or submission, the district court lacked personal jurisdiction over the necessary parties to order the return of the $520 paid by Peterson in this case.

## III.

## CONCLUSION

The district court's order dismissing Peterson's felony conviction became final after the expiration of the time for appeal or affirmance of the dismissal on appeal and, therefore, the district court's jurisdiction to amend the order expired at that time. None of the rules cited by Peterson apply to extend the district court's jurisdiction to hear Peterson's motion seeking an order for reimbursement that was filed ten months after the entry of the district court's order dismissing his case. Therefore, the district court did not have subject matter jurisdiction to hear Peterson's motion. Even assuming the district court had such subject matter jurisdiction, the district court lacked personal jurisdiction over the nonparty agencies that collected, disbursed, or retained the $520 paid by Peterson in this case. Accordingly, the district court's order denying Peterson's motion seeking an order for reimbursement is affirmed.

Judge GUTIERREZ, **CONCURS.**

Judge LANSING, **SPECIALLY CONCURRING**

Although the State of Idaho has prevailed in this appeal, this is not a situation of which the State or its subdivision, Ada County, should be proud. Regardless of whether Peterson chose the correct procedural mechanism to seek a refund, it is owed to him. When Wade Lamonte Peterson's judgment of conviction was reversed by the Idaho Supreme Court, that decision reversed the *entire* judgment, including the fines, fees, court costs, and restitution orders that it encompassed. One can only wonder why these funds were not voluntarily remitted to Peterson

14

promptly after he made his request for reimbursement.[1] The State has not even argued that the state and county agencies that received Peterson's money have any lawful right to retain the funds; it argues only that the Court *in this proceeding* has no authority to order the disgorgement of those funds. Reluctantly, I must agree. Thus, the only recourse for people in Peterson's position is to file a separate lawsuit naming as a defendant each public agency that received a portion of his payments. For Peterson, the cost of preparing, filing, serving process, and litigating such a civil case might well exceed the amount he stands to recoup. Consequently, he has suffered an injustice that may not be remedied.

This problem calls for a legislative solution. A simple, inexpensive, and speedy mechanism should be available by which a person whose conviction has been set aside with finality may recoup fines, fees, and other sums paid to public agencies pursuant to a subsequently vacated judgment when the agencies will not make voluntary refunds.

Judge GUTIERREZ, **CONCURS.**

---

[1] Either the public agencies refused refunds to Peterson or the prosecutor did not notify the agencies of Peterson's request for and entitlement to reimbursement.